1
2
3
4
5
6
7
8
9

10          **UNITED STATES DISTRICT COURT**

11          **NORTHERN DISTRICT OF CALIFORNIA**

12          **SAN FRANCISCO DIVISION**

13  BETSY FEIST,                         Case No. 12-cv-80119 SI (NC)
                                              Related cases:
14                Plaintiff,                        12-cv-80135 SI (NC)
                                                    12-cv-80121 SI (NC)
15          v.                                      12-cv-80140 SI (NC)

16  RCN CORPORATION and PAXFIRE,         **ORDER GRANTING IN PART AND**
    INC.,                                **DENYING IN PART MOTIONS TO**
17                                        **QUASH**
                  Defendants.
18

19

20          The motions to quash addressed in this order concern subpoenas issued by Paxfire in this

21  district to seven nonparties in connection with a class action filed by Betty Feist against RCN and

22  Paxfire in the Southern District of New York.  That case is captioned *Betsy Feist v. RCN Corp.*,

23  No. 11-cv-05436 JGK.  The subpoenaed nonparties and Feist move to quash each of the

24  subpoenas, arguing that the subpoenas call for privileged documents and information.  The

25  motions are GRANTED IN PART AND DENIED IN PART.

26  //

27

28

1

**I. BACKGROUND**

2    **A.     Summary of the claims, defenses, and counterclaims in *Feist***

3          The following facts are taken from the complaint filed in *Feist*.[1]  Feist, a resident of New

4    York, uses RCN's services to access the internet and to conduct searches through search engines

5    like Yahoo! and Google.  RCN is an internet service provider (ISP).  Paxfire is a company that

6    profits from redirecting internet users who mistype web addresses to webpages it operates.

7          Feist alleges that RCN and Paxfire intentionally and unlawfully intercepted, manipulated,

8    and marketed data sent by users of various ISPs to search engines like Yahoo!, Google, or Bing.

9    ISPs generally provide to their users access to the internet.  When a user types a correctly-spelled

10   domain name into her browser (such as www.google.com), that domain name is sent to the ISP's

11   server, which translates the domain name into the IP address assigned to that domain name (like

12   216.239.51.99) by using a Domain Name System (DNS) resolver.  Once the DNS translates the

13   domain name into its corresponding IP address, the ISP then takes the user to the server

14   corresponding to that IP address.

15         Feist claims that RCN used Paxfire's technology to (1) have its DNS resolvers incorrectly

16   translate the domain names entered by its users such that the users are directed to servers operated

17   by RCN and Paxfire rather than to the servers that actually correspond to the domain names

18   entered by the users; and (2) intercept data entered by the users to monitor user activity.  Through

19   these actions, defendants intercepted the communications between the users and the search

20   engines without the users' consent or knowledge.  Paxfire generates revenue by posting

21   advertisements on the servers to which users are directed and by selling the data it gathers from

22   users to third parties.  Paxfire then splits the revenue it generates with RCN.

23         Netalyzr is a publicly available tool that evaluates the functionality provided by an

24   internet connection, including DNS behavior.  It was developed by Nicholas Weaver, Christian

25   Kreibich, and Vern Paxson, all of whom are researchers affiliated with the International

26   Computer Science Institute (ICSI) and the University of California at Berkeley.  These

27

28
---
[1] Compl., Req. for Judicial Notice, Ex. A, Dkt. No. 8, 12-mc-80135.  The court takes judicial notice of the complaint in *Feist* under Federal Rule of Evidence 201.

1  researchers discovered the unlawful interceptions that form the basis of Feist's complaint by

2  using the Netalyzr. Feist herself did not discover that RCN and Paxfire were intercepting and

3  redirecting her communications with search engines until she used the Netalyzr. Feist consulted

4  with the researchers who developed the Netalyzr regarding the technological aspects of the

5  allegations in her complaint.

6  Feist brings seven claims against RCN and Paxfire: (1) violations of the Wiretap Act, 18

7  U.S.C. § 2510; (2) violations of Virginia's Consumer Protection Act; (3) violations of New

8  York's General Business Law; (4) conversion; (5) unjust enrichment; (6) breach of contract; and

9  (7) breach of the implied covenant of good faith and fair dealing.

10  In its answer, Paxfire denies Feist's allegations and claims that Feist conspired with the

11  Electronic Frontier Foundation (EFF) and ICSI to damage and destroy Paxfire and its business

12  model by publishing false allegations regarding Paxfire's business practices.[2] Paxfire claims that

13  the activities of Feist, EFF and ICSI caused its customers to sever their business relationships

14  with it and led to the termination of negotiations for the sale of Paxfire to a third party. Paxfire

15  brings the following counterclaims against Feist, all of which arise under the laws of New York:

16  (1) tortious interference with contracts; (2) tortious interference with business relationships; (3)

17  slander; and (4) libel. A motion to dismiss these counterclaims is fully briefed and is under

18  submission.[3]

19  **B.    The subpoenas at issue**

20  Paxfire issued document and deposition subpoenas to the following nonparties: ICSI,

21  Kreibich, Paxson, Weaver, EFF, Eckersley, and Giles. The nonparties and Feist move to quash

22  each of the subpoenas, arguing that the subpoenas call for privileged information.[4] Paxfire

23  opposes the motions. Each of the motions was referred to this court by District Judge Illston.

24  [2] Answer ¶ 5, Req. for Judicial Notice, Ex. B, Dkt. No. 8, Case No. 12-mc-80135. The court

25  takes judicial notice of this pleading filed in *Feist* under Federal Rule of Evidence 201.
    [3] Mot. to Dismiss, Req. for Judicial Notice, Ex. C, Dkt. No. 8, Case No. 12-mc-80135. The court

26  takes judicial notice of this motion filed in *Feist* under Federal Rule of Evidence 201.
    [4] *See* Case No. 12-mc-80119, Dkt. No. 1 (motion to quash filed by Giles); 12-mc-80121, Dkt.

27  Nos. 1, 7 (motions to quash filed by Feist); Case 12-mc-80135, Dkt. No. 1 (motion to quash filed
    by Eckersley and EFF); Case No. 12-mc-80140, Dkt. No. 1 (motion to quash filed by ICSI and

28  Kreibich).

Case No. 12-cv-80119 SI (NC)
ORDER GRANTING IN PART                3
MOTIONS TO QUASH

1

## II. STANDARD OF REVIEW

2         The scope of the discovery that can be requested through a subpoena under Rule 45 is the

3  same as can be requested under Rule 34, which in turn is the same as can be requested under Rule

4  26(b).  Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding

5  any nonprivileged matter that is relevant to any party's claim or defense.  Relevant information

6  need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

7  discovery of admissible evidence."  FED. R. CIV. P. 26(b)(1).

8         A court must quash or modify a subpoena that fails to allow reasonable time to comply,

9  requires a person to travel more than 100 miles from his residence or place of employment,

10 "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or

11 "subjects a person to undue burden."  FED. R. CIV. P. 45(c)(3)(A).  Additionally, a court may

12 quash a subpoena that requires the disclosure of confidential research or the opinion of an

13 unretained expert that does not describe specific occurrences in dispute and results from the

14 expert's study that was not requested by a party.  FED. R. CIV. P. 45(c)(3)(B).

15

## III. DISCUSSION

16 **A.    The document subpoenas issued to ICSI, Christian Kreibich, Vern Paxson,**

17      **Nicholas Weaver, EFF, and Peter Eckersley are quashed in part**

18        ICSI is a center for research in computer science and a nonprofit institute that has been

19 affiliated with the University of California at Berkeley since 1988.[5]  ICSI collaborates with

20 political and industry groups such as EFF, news organizations, and writers on computer science

21 issues.[6]

22        Kreibich, Paxson, and Weaver are ICSI researchers.[7]  They created the Netalyzr and

23 published several peer-reviewed papers, news articles, and blog posts regarding the same.[8]

24 While conducting the investigations and research that form the basis of these papers and articles,

25 the ICSI researchers collaborated with EFF, Peter Eckersley, the New Scientist, Poly NYU,

26

27 [5] Kreibich Decl. ¶ 4, Dkt. No. 3, Case No. 12-mc-80140.
   [6] *Id.*

28 [7] *Id.* ¶¶ 9-10.
   [8] *Id.* ¶¶ 10-14.

Case No. 12-cv-80119 SI (NC)
ORDER GRANTING IN PART          4
MOTIONS TO QUASH

Google, Microsoft, and Yahoo![9]

EFF is a nonprofit civil liberties and legal aid organization that supports lawsuits and engages in policy discussions with respect to user rights to privacy, free speech, and innovation as applied to the internet and other technologies.[10] EFF also researches and publishes articles on its website concerning technology, civil liberties, and user rights. In the last few years, EFF has been concerned with issues of network neutrality.

Eckersley is EFF's Technology Projects Director. He is a computer scientist who works on internet policy issues, including privacy and network neutrality.[11] Eckersley first became aware of the issues presented in the *Feist* lawsuit when the ICSI researchers contacted him in April 2011 about the Netalyzr's test results.[12] Eckersley then published a blog post on EFF's website in conjunction with the ICSI researchers concerning Paxfire's redirection of search engine traffic.[13] Eckersley and EFF provided advice and informal consulting to Feist concerning the issues in the *Feist* litigation, but they were not retained as paid consultants.[14]

Paxfire issued subpoenas to ICSI, the ICSI researchers, EFF, and Eckersley that call for the production of all documents referencing (1) Feist and her counsel, including consulting agreements and expert witness agreements; (2) all payments made by Feist or her counsel to ICSI or EFF; (3) any litigation in which the subpoenaed nonparties participated in any way and in which Feist's lawyers were also involved; (4) communications by the subpoenaed nonparties with respect to Feist or her counsel, Paxfire, RCN, the New Scientist or Jim Giles, Poly NYU, or the Netalyzr; (5) articles and drafts of articles authored by the subpoenaed nonparties concerning Feist or her counsel, Paxfire, or the Netalyzr; and (6) all research results concerning Paxfire or RCN or any of the ISPs mentioned in the *Feist* complaint.[15] The time period for these documents

[9] *Id.*
[10] Cohn Decl. ¶ 1, Dkt. No. 3, Case No. 12-mc-80135.
[11] Eckersley Decl., Dkt. No. 5, Case No. 12-mc-80140.
[12] *Id.* ¶¶ 7-8.
[13] *Id.* ¶ 16.
[14] *Id.* ¶¶ 19-20.
[15] Document subpoena to ICSI, Smith Decl., Ex. A, Dkt. No. 2, Case No. 12-mc-80140; Document subpoena to Kreibich, Smith Decl., Ex. B, Dkt. No. 2, Case No. 12-mc-80140; Document subpoenas to Paxson and Weaver, Richman Decl., Ex. E, F; Dkt. No. 2, Case No. 12-mc-80121; Document subpoenas, Rodewald Decl., Ex. A, B, Dkt. No. 7, Case No. 12-mc-80135.

is January 1, 2008, to the present with respect to the documents in categories (1), (2), and (3); January 1, 2011, to the present with respect to category (4); and April 1, 2011, to the present with respect to category (5).  Category (6) has no temporal limitation.

**1.      The subpoenas are quashed with respect to documents generated after July 24, 2011, that fall within categories (1), (2), (3), and (4) because they are protected by the work-product doctrine under Rule 26(b)(3)**

Feist moves to quash these subpoenas, arguing that the documents requested are privileged because the ICSI and each of its researchers "acts and has acted as a consultant to plaintiff Betsy Feist in connection with this litigation" and the documents were created "in anticipation of or in connection with the litigation."[16]  Feist claims that she and her counsel began informally consulting with Eckersley in May 2011. [17]  Feist also claims that she began consulting with Kreibich, Paxson, and Weaver in July 2011 and that she signed a consulting agreement with these researchers on August 31, 2011.[18]  Feist claims that these persons and entities assisted her and her counsel in understanding the technical aspects of internet communications, the use of proxy servers by RCN and Paxfire, and the results generated by the Netalyzr.  Feist contends that she and her counsel shared information and documents with the researchers based on an agreement to keep such information and documents confidential.

Paxfire opposes the motion, arguing (1) that no documents generated before July 24, 2011, can be protected by the work-product doctrine because Feist did not retain her attorneys until that date; that there is no written consulting agreement with ICSI, Eckersley, or EFF, and that the written consulting agreement with the ICSI researchers was signed three months after *Feist* was filed; (3) the information in the documents at issue was generated in the regular course of business; (4) any privileges that may apply were waived; and (5) any privileges that may apply are outweighed by Paxfire's need to obtain the documents to defend against Feist's claims against it.[19]

---

[16] Mot, Dkt. No. 1, Case No. 12-mc-80121; Richman Decl. ¶ 3.
[17] Richman Decl. ¶¶ 14-15.
[18] *Id.*
[19] Opp'n, Dkt. No. 15, Case No. 12-mc-80121.

1        Federal Rule of Civil Procedure 45(c)(3)(A)(iii) requires a court to quash a subpoena that

2 "requires disclosure of privileged or other protected matter, if no exception or waiver applies."

3 Under the work-product doctrine, which is codified in Federal Rule of Civil Procedure 26(b)(3),

4 "a party may not discover documents and tangible things that are prepared in anticipation of

5 litigation or for trial by or for another party or its representative (including the other party's

6 attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those

7 materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii)

8 the party shows that it has substantial need for the materials to prepare its case and cannot,

9 without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P.

10 26(b)(3)(A).

11        Under Rule 26(b)(3), the work-product doctrine cannot apply to a document unless the

12 document is prepared by or for a party or its representative. Here, the earliest date on which Feist

13 can be considered a party to *Feist* is July 24, 2011, which is the date on which she claims to have

14 first consulted with her attorneys regarding Paxfire.[20] Thus, any requested documents generated

15 prior to July 24, 2011 are not protected under Rule 26(b)(3).

16        Feist argues that the protections of Rule 26(b)(3) "apply during the course of Feist's

17 attorneys' investigation of the matter, even before a client was formally retained" because "it is

18 reasonable and prudent (if not explicitly required) for an attorney to investigate claims before

19 agreeing to represent a client or file an action."[21] The court is not persuaded by this argument for

20 two reasons. First, the language of Rule 26(b)(3) refers specifically to a "party or its

21 representative," which suggests that the work-product doctrine applies only after a party has

22 become involved in a matter. *See* FED. R. CIV. P. 26(b)(3)(A) ("a party may not discover

23

24 [20] *See* Feist Deposition Tr. at 9:12-16, Grosso Decl., Ex. E, Dkt. No. 12-cv-80121 (Q: "I'd like to ask you how you first heard about Paxfire. A: "I first heard from one of my lawyers who's not
25 here today, Kim Richman, who called me and discussed it with me"); Tr. at 196:23-25, 197:1-2 (Q: "And do you remember when you had that initial conversation with [] Richman?" A: "Well, I
26 think it was probably on July 24th or 25th, 2011"); Tr. 198:18-25 (Q: "Do you remember whether he said if he was contacting you in his capacity as an attorney?" A: "I don't remember if he used
27 those words, but clearly he was contacting me about a case I might potentially be involved in so it was as an attorney he was doing that").
28 [21] Reply at 4, Dkt. No. 20, Case No. 12-mc-80121.

1  documents and tangible things that are prepared in anticipation of litigation or for trial by or for

2  *another party or its representative . . .*") (emphasis added). Second, the authorities cited by Feist

3  in support of its argument are not controlling on this court.

4  With respect to the documents that were generated after July 24, 2011, the court finds that

5  some of them are subject to the protections of Rule 23(b)(3), namely those in categories (1), (2),

6  (3), and most of the documents in category (4).

7  To qualify for protection against discovery under Rule 26(b)(3), "documents must have

8  two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they

9  must be prepared by or for another party or by or for that other party's representative." *In re*

10  *Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (citation and internal quotation marks

11  omitted).

12  As to the first characteristic, the requested documents in categories (1), (2), and (3), which

13  concern the consulting agreement between the subpoenaed nonparties and Feist, "can be fairly

14  said to have been prepared or obtained because of the prospect of litigation." *Id.* The requested

15  documents in category (4), with the exception of documents referencing the New Scientist and

16  reporter Jim Giles, concern communications by the subpoenaed nonparties with respect to the

17  Netalyzr and the parties involved in *Feist*, and therefore, they can be said to have been prepared

18  because of the prospect of litigation.

19  These documents also meet the second characteristic, because they were created by or for

20  the subpoenaed nonparties, all of whom have been consultants for Feist since May and July 2011.

21  Whether or not the consulting work performed by the subpoenaed nonparties was done in

22  accordance with a formal or informal consulting agreement makes no difference under Rule

23  26(b)(3), as that rule does not make any distinctions with respect to the definition of "consultant."

24  The remaining documents in category (4), which concern communications with the New

25  Scientist, a science publication, and Jim Giles, a reporter for the New Scientist; as well as the

26  documents in category (6), which concern articles and research performed by the subpoenaed

27  nonparties, cannot be said to have been prepared because of the prospect of litigation, and

28  therefore are not entitled to protection under Rule 26(b)(3). *See In re Grand Jury Subpoena*, 357

Case No. 12-cv-80119 SI (NC)
ORDER GRANTING IN PART                    8
MOTIONS TO QUASH

1  F.3d at 908 (holding that a document can be fairly said to have been prepared or obtained because

2  of the prospect of litigation if it "would not have been created in substantially similar form but for

3  the prospect of that litigation").

4  Because the work-product doctrine applies to the documents in categories (1), (2), (3), and

5  (4), as described above, Paxfire may discovery these documents only if they are otherwise

6  discoverable under Rule 26(b)(1) and Paxfire shows that it has substantial need for the materials

7  to prepare its case and cannot obtain their substantial equivalent by other means. Paxfire has not

8  met this burden. Paxfire states conclusorily that "the information is needed by Paxfire to prepare

9  its defense as well as its counterclaims, and it is unable to get this information from any other

10  source" and that "Paxfire must obtain the documents from the researchers who provided Ms. Feist

11  the information on which she based her complaint . . . without that information, Paxfire will be

12  unable to learn what evidence it may face at trial."[22] These statements are insufficient to establish

13  an inability to obtain the information that forms the basis of Feist's complaint from other means,

14  as that information can be obtained from Feist herself. Accordingly, Paxfire may not discover

15  any of the documents to which the work-product doctrine applies.

16  Paxfire claims that any privilege applicable to the requested documents was waived

17  because Kreibich sent an email to reporter Jim Giles and to Feist's lawyers stating that Giles "is

18  up to date on our findings, so it seems helpful for all of you to have each other's contact

19  information."[23] As this email does not show that any privileged communications were disclosed

20  to Giles, the court finds that the work-product protection that applies to the documents was not

21  waived.

22  **2.   The subpoenaed nonparties must produce nonprivileged responsive**

23  **documents generated before July 24, 2011, that fall within categories (1), (2),**

24  **(3), and (4)**

25  The subpoenaed nonparties must produce nonprivileged responsive documents generated

26  before July 24, 2011, that fall within categories (1), (2), (3), and (4). Because some of these

27

28  [22] Opp'n at 8, Dkt. No. 15, Case No. 12-mc-80121.
[23] *Id.* at 6.

1   documents are relevant to Paxfire's counterclaims only, the nonparties are not required to produce

2   any documents, or a privilege log for any documents they withhold as privileged, until sixty days

3   after the motion to dismiss Paxfire's counterclaims is decided.

4         **3.     The subpoenas are quashed with respect to the documents in categories (5)**

5             **and (6) because the documents contain confidential research**

6         A court may quash a subpoena that requires the disclosure of confidential research or the

7   opinion of an unretained expert that does not describe specific occurrences in dispute and results

8   from the expert's study that was not requested by a party.  FED. R. CIV. P. 45(c)(3)(B).

9         Here, Feist and the subpoenaed nonparties argue that the requested documents in

10  categories (5) and (6) contain confidential and "potentially commercially sensitive information

11  related to government and nongovernment entities."[24]  Categories (5) and (6) call for articles and

12  drafts of articles authored by the subpoenaed nonparties concerning Feist or her counsel, Paxfire,

13  or the Netalyzr, as well as all research results obtained by the subpoenaed nonparties concerning

14  Paxfire or RCN.  The court is persuaded that these documents constitute confidential research

15  within the meaning of Rule 45(c)(3)(B); accordingly, the subpoenas are quashed with respect to

16  these documents.

17  **B.     The deposition subpoenas issued to ICSI, Christian Kreibich, EFF, and Peter**

18         **Eckersley are quashed**

19        Paxfire issued deposition subpoenas to ICSI, Kreibich, EFF, and Eckersley.[25]  As

20  discussed above, Feist claims that these persons and entities assisted her and her counsel in

21  understanding the technical aspects of internet communications, the use of proxy servers by RCN

22  and Paxfire, and the results generated by the Netalyzr.  None of the subpoenaed nonparties has

23  been identified by Feist as a testifying expert.

24        The subpoenaed nonparties move to quash the subpoenas, arguing that they may not be

25  deposed under Rule 26(b)(4)(D) because they are non-testifying experts who were consulted in

26  anticipation of or in preparation for this litigation.

27  [24] Kreibich Decl. ¶ 16.

28  [25] Deposition subpoenas, Smith Decl., Ex. C, D, Dkt. No. 2, Case No. 12-mc-80140; Deposition
subpoenas, Rodewald Decl., Ex. C, D, Dkt. No. 7, Case No. 12-mc-80135.

Federal Rule of Civil Procedure 26(b)(4)(D) provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.  But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  This rule "precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed."  FED. R. CIV. P. 26 advisory committee's note.

As each of the subpoenaed nonparties was consulted by Feist in preparation for the *Feist* litigation, none of them may be deposed or served with interrogatories under Rule 26(b)(4)(D).  Here, Paxfire has not shown exceptional circumstances to circumvent this rule, as Paxfire can obtain information to support its defenses and counterclaims from Feist herself, from the articles that the subpoenaed nonparties have published, and from its own experts.  Accordingly, these deposition subpoenas are quashed.

**C.      The document subpoena issued to Jim Giles is quashed**

Jim Giles, a California resident, is a freelance journalist who published several stories in the New Scientist Magazine, which is a weekly print and online publication for a general audience that focuses on science and technology.[26]  Giles wrote a handful of articles that were published on the New Scientist website concerning the Netalyzr and explaining how a user could use the Netalyzr to track interference by his or her ISP.[27]  One of these articles mentioned that the *Feist* case had been filed.[28]

Paxfire served a subpoena on Giles that calls for documents generated between January 1, 2011, to the present that reference or contain communications pertaining to Feist, Feist's counsel, Paxfire, or the Netalyzr.[29]

Giles moves to quash the subpoena, arguing that the documents Paxfire requests, with the

---

[26] Giles Decl. ¶¶ 1-4, Dkt. No. 3, Case No. 12-mc-80119.
[27] *Id.*
[28] *Id.*
[29] *Id.*, Subpoena, Ex. C.

1  exception of his published articles, are privileged under the California Constitution and California

2  Shield Laws because they contain information concerning his newsgathering activities with

3  respect to the ISP search-redirection scandal.[30]  Giles further contends that Paxfire cannot

4  demonstrate that an exception or waiver applies to this privilege.  Giles seeks a protective order

5  limiting any future subpoenas that may be issued to him by any of the parties in *Feist*.

6        Paxfire argues that the documents at issue are relevant to its counterclaims against Feist,

7  because they contain defamatory statements that Feist or her attorneys allegedly made to the New

8  Scientist regarding its business practices.[31]  Paxfire claims that because Feist's attorneys have

9  confirmed the existence of communications between themselves and Giles, any privilege as to the

10  documents has been waived.

11        **1.      New York law applies to Giles' claim of privilege**

12        The court first must determine whether federal or state law applies to Giles' claim of

13  privilege.  "The common law—as interpreted by United States courts in the light of reason and

14  experience—governs a claim of privilege unless any of the following provides otherwise: the

15  United States Constitution; a federal statute; or rules prescribed by the Supreme Court.  But in a

16  civil case, state law governs privilege regarding a claim or defense for which state law supplies

17  the rule of decision."  FED. R. EVID. 501.  When a party in a civil suit asserts a privilege, "it

18  makes no difference whether the supposedly privileged matter is direct or circumstantial evidence

19  of a state claim; if it is in a line of proof that culminates in an element of a state claim or defense,

20  then state rules of privilege apply."  23 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD

21  H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 5434 (3d ed. 2012 supp.).

22        Here, state law governs Giles' claim of privilege, because Paxfire claims that the

23  documents at issue are relevant to its counterclaims against Feist, all of which arise out of the law

24  of New York.  *See Shaklee Corp. v. Gunnell*, 110 F.R.D. 190, 192 (N.D. Cal. 1986) ("Where, as

25  here, state and federal claims are joined, but the evidence affects only the state claims the state

26  law of privilege applies.").

27

28  [30] Mot., Dkt. No. 1, Case No. 12-mc-80119.
   [31] Opp'n, Dkt. No. 9, Case No. 12-mc-80119.

1   The court must now determine whether California law or New York law should govern

2   Giles' claim of privilege.  Giles argues that California law should govern because he resides in

3   California, he wrote the news articles that gave rise to the privilege in California, and the

4   subpoena was issued out of California.[32]  Paxfire argues that New York law should govern

5   because the *Feist* litigation is pending in the Southern District of New York, the communications

6   at issue are relevant to Paxfire's counterclaims, which arise out of New York law, and the

7   communications were made by Feist and her counsel while they were in New York.[33]  The Ninth

8   Circuit has not determined which state law should apply when the court hearing a discovery

9   dispute is in a different state from the court hearing the underlying action, but district courts in

10  this circuit have held that "the court hearing the discovery dispute must apply the choice of law

11  rules of its forum" to determine this question.  *See, e.g.*, *Wolpin v. Philip Morris Inc.*, 189 F.R.D.

12  418, 423 (C.D. Cal. 1999) (citations omitted).

13      The choice-of-law "approach that has been adopted in California is the 'governmental

14  interest' analysis."  *Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1195 (9th Cir. 1982)

15  (citations omitted).  This analysis requires the court to make three separate inquiries: (1) the court

16  first must determine whether the laws of each jurisdiction differ on the issue before it; (2) if the

17  laws differ, then the court must determine what interests, if any, the competing jurisdictions have

18  in the application of their respective laws; and (3) if a conflict exists between the interests of the

19  jurisdictions, then the court must determine which jurisdiction's interests would be most impaired

20  if its policies were subordinated to those of the other jurisdiction.  *Id.*

21      As to the first inquiry, the laws of California and New York differ with respect to Giles'

22  claim of privilege.  California's Shield Law provides journalists with an absolute privilege with

23  regard to "any unpublished information obtained or prepared in gathering, receiving or processing

24  of information for communication to the public."  CAL. CONST. art. I. § 2(b).  On the other hand,

25  New York's Shield Law "provides journalists . . . only a qualified privilege with regard to news

26  that is both unpublished and not obtained under a promise of confidentiality."  *Baker v. Goldman*

27

28  [32] Mot. at 4.
    [33] Opp'n at 7.

1   *Sachs & Co.*, 669 F.3d 105, 107 (2d Cir. 2012) (citation omitted).  Here, the communications at

2   issue, which are unpublished, cannot be said to have been obtained under a promise of

3   confidentiality because Feist's lawyers have disclosed to Paxfire the existence of such

4   communications.  As such, these communications would be protected by an absolute privilege

5   under the laws of California, but they would be protected by a qualified privilege under the laws

6   of New York.

7           As to the second inquiry, it appears that a conflict exists between the interests of

8   California and New York in the application of their laws to Giles' claim of privilege.  On the one

9   hand, California has an interest in protecting its journalists from having to produce unpublished

10  information they obtained in the course of their newsgathering activities.  On the other hand, New

11  York has an interest in applying its laws to matters that are relevant to claims arising under New

12  York law and that will be decided in a federal court sitting in New York.

13          As to the third inquiry, the court finds that the interests of New York would be most

14  impaired if the laws of California are applied to Giles' claim of privilege, as New York has more

15  connections to the parties and matters involved in *Feist* than California.  Accordingly, the court

16  finds that the law of New York should apply to Giles' claim of privilege.

17          **2.        The communications at issue are protected by a qualified privilege, and**

18                      **Paxfire has not made a sufficient showing to overcome that privilege**

19          As discussed above, New York's Shield Law "provides journalists . . . only a qualified

20  privilege with regard to news that is both unpublished and not obtained under a promise of

21  confidentiality."  *Baker*, 669 F.3d at 107.  "Under this privilege, reporters who, for gain or

22  livelihood, [are] engaged in . . . writing . . . news intended for a newspaper are protected from

23  coerced disclosure of any unpublished news obtained or prepared . . .  in the course of gathering

24  or obtaining news . . . or the source of any such news, where such news was not obtained or

25  received in confidence."  *Id.* at 107-08 (citations and internal quotation marks omitted).  Here,

26  Giles has shown that the qualified privilege applies to the communications at issue, as he claims

27  to be a journalist who obtained the communications in the course of his newsgathering activities.

28          Paxfire may obtain the communications at issue only if it overcomes the qualified

privilege by making a clear and specific showing that the communications: (i) are highly material and relevant; (ii) are critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) are not obtainable from any alternative source. *Id.* at 108 (citation omitted). Here, Paxfire fails to show that the communications at issue are not obtainable from any alternative source. On the contrary, Paxfire stated in its opposition to Giles' motion that it already has obtained certain documents evincing the communications from Feist's counsel. As Paxfire can discover information concerning the communications from Feist or her attorneys, Paxfire cannot overcome the qualified privilege governing the communications. Accordingly, the document subpoena Paxfire issued to Giles is quashed.

## IV. CONCLUSION

The motions to quash the subpoenas Paxfire served on seven nonparties are GRANTED IN PART AND DENIED IN PART. All of the subpoenas at issue are quashed in their entirety except for the document subpoenas that Paxfire issued to ICSI, Christian Kreibich, Vern Paxson, Nicholas Weaver, EFF, and Peter Eckersley, which are quashed in part. These nonparties must produce:

1. any nonprivileged documents generated after July 24, 2011, that concern communications with the New Scientist, a science publication, and Jim Giles, a reporter for the New Scientist (remaining documents in category (4)); and

2. any nonprivileged documents generated before July 24, 2011, that fall within categories (1), (2), (3), and (4).

The categories of documents are defined on pages 5 and 6 of this order.

The nonparties are not required to produce any documents or a privilege log for any withheld documents until sixty days after the motion to dismiss Paxfire's counterclaims is decided. The parties may file objections to this order within fourteen days of the date it is filed. FED. R. CIV. P. 72(a).

IT IS SO ORDERED.

Date: August 13, 2012

Nathanael M. Cousins
United States Magistrate Judge