1

DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com

2

MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com

3

JAIDEEP VENKATESAN, Bar No. 211386
jvenkatesan@be-law.com

4

BERGESON, LLP
303 Almaden Boulevard, Suite 500

5

San Jose, CA 95110-2712
Telephone:  (408) 291-6200

6

Facsimile:   (408) 297-6000

7

ANDREW GROSSO, Esq., *pro hac vice*
Agrosso@acm.org

8

ANDREW GROSSO & ASSOCIATES
Georgetown Place

9

1101 Thirtieth St., NW, Suite 300
Washington, D.C. 20007

10

Telephone:  (202) 298-6500
Facsimile:   (202) 298-5599

11

12

Attorneys for Defendant-Counterclaim Plaintiff
PAXFIRE, INC.

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

SAN FRANCISCO DIVISION

16

BETSY FEIST,

17

Plaintiff,

18

vs.

19

20

RCN CORPORATION and
PAXFIRE, INC.,

21

22

Defendants.

23

24

25

26

27

28

Misc. Case No. CV12-80135 SI (NC)

Underlying action pending in the United States
District Court for the Southern District of
New York, Case No. 11 CV 5436 JGK
Related cases:
3:12-cv-80119 SI (NC)
3:12-cv-80121 SI (NC)
3:12-cv-80140 SI (NC)

**OPPOSITION OF DEFENDANT PAXFIRE
TO MOTION FOR *DE NOVO*
DETERMINATION OF DISPOSITIVE
MATTER REFERRED TO MAGISTRATE
JUDGE**

Date:  October 19, 2012
Time:  9:00 a.m.
Hon. Judge Susan Illston
Courtroom 10, 19th Floor

# TABLE OF CONTENTS

I.     The Subpoenas at Issue: Procedural History and Standard of review.................................3

II.    ARGUMENT ......................................................................................................6

    A.    EFF Lacks Standing to Object to the Magistrate's Decision Regarding the
        Applicability of the Work Product Doctrine. .........................................................6

    B.    The Correct General Standard of Review of the Magistrate Judge's order is
        Whether It Is Clearly Erroneous and Contrary to Law, not de novo.....................6

        1.    The Order concerns a discovery dispute, which is not a dispositive
             matter..................................................................................................7

        2.    The Standard of the Review Is Not Heightened by the Fact That the
             Order of the Magistrate Judge's Does Not Address in Particulars Each
             and Every Argument Offered by EFF Made in Its Motion to Quash.........8

        3.    EFF's Presentation of a First Amendment Claim Does Not Change
             the Standard of Review or the Procedures for Obtaining Review .............9

    C.    EFF Presents no Basis to Reverse the Order to Produce Documents ....................9

III.   No Privilege or Constitutional Right Shields EFF from This Routine Discovery ...........11

    A.    No General Privilege Exists for Advocacy Organizations or Researchers Such
        as Movants.........................................................................................................14

    B.    No General Privilege Exists for Investigations .....................................................15

    C.    Neither California Nor New York Press Privilege Law Applies to EFF
        Because EFF is Not "Press" ................................................................................16

    D.    Neither the Attorney Client Privilege Nor the Work-Product Doctrine Shield
        EFF ...................................................................................................................20

IV.    The Need for Discovery Outweighs Any Speculative Need for Secrecy........................21

V.     CONCLUSION ................................................................................................23

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. Case No. CV12-80135 SI (NC)

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*800 Front Street Corp. v. Travelers Property Casualty Co. of America*,
No., CV 06-500(LDW)(ARL), 2006 U.S.Dist. LEXIS 84160 (E.D.N.Y. Nov. 20, 2006) ..... 20

*Adolph Coors Co. v. Wallace*,
570 F. Supp. 202 (1983) ................................................................................................ 9

*Agster v. Maricopa County*,
422 F.3d 836 (9th Cir. 2005) ....................................................................................... 17

*Anker v. G.D. Searle & Co.*,
126 F.R.D. 515 (M.D.N.C.1989) ................................................................................. 15

*Barkwell v. Sturm Ruger Co., Inc.*,
79 F.R.D. 444 (D. Alaska 1978) .................................................................................. 22

*Boyd v. City & County of San Francisco*,
No. C-04-545MM(JLS) 2006 U.S. Dist. LEXIS ........................................................ 16

*Burka v. U.S. HHS*,
87 F.3d 508 (D.C. Cir 1996) ...................................................................................... 15

*Channelmark Corp. v. Destinations Products Int'l, Inc.*,
No. 99 C 214, 2000 U.S.Dist. LEXIS 9854 (N.D. Ill. July 7, 2000) ............................ 8

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011) ....................................................................................... 16

*Deitchman v. E.R. Squibb & Sons*,
740 F.2d 556 (7th Cir. 1984) ...................................................................................... 15

*Dung Ngo v. Standard Tools & Equipment, Co., Inc.*,
197 F.R.D. 263 (D. Md. 2000) .................................................................................... 22

*Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix, Inc., No. 03cv352-
BEN(WMC)* 2005, U.S. Dist. LEXIS 47173 (S.D.Ca. Aug. 11, 2005) ...................... 16

*Fraley v. Facebook, Inc.*
2012 U.S. Dist. LEXIS 116526 (NDCA 2012) ............................................................. 2

*Hall v. EarthLink Network, Inc.*,
396 F.3d 500 (2d Cir. 2005) ......................................................................................... 1

*Harasimowicz v. McAllister*,
78 F.R.D. 319 (E.D. Pa. 1978) .................................................................................... 23

- ii -

*Herbert v. Lando*,
    441 U.S. 153 (1977) ........................................................................................... 10, 11, 12, 14

*Hickman v Taylor*,
    329 U.S. 495 (1947) ........................................................................................................ 20

*Highfields Capital Management, L.P. v. Doe*,
    385 F. Supp 2d 969 (N.D. Cal 2005) ................................................................................ 8

*Hobley v. Burge*,
    433 F.3d 946 (7th Cir. 2006) ............................................................................................ 6

*In re American Tobacco Co.*,
    880 F.2d 1520 (2d Cir. 1989) ......................................................................................... 15

*In re Application of Consumers Union of U.S.*,
    495 F. Supp. 582 (S.D.N.Y. 1980) ................................................................................. 21

*In re Google Buzz User Privacy Litigation*
    10-00672-JW (NDCA 2010) ............................................................................................ 2

*In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*,
    No. MISC 08–347(ARR)(MDG), 2010 U.S. Dist. LEXIS 40653 (E.D.N.Y. Feb. 5,
    2010) .................................................................................................................................. 7

*In re Snyder*,
    115 F.R.D. 211 (D.Ariz.1987) ........................................................................................ 15

*Keith v. Van Dorn Plastic Machinery Co.*,
    86 F.R.D. 458 (E.D. Pa. 1980) ....................................................................................... 22

*Kerr v. U.S. Dist. Ct. for N. D.*,
    426 U.S. 394 (1976) .................................................................................................. 13, 14

*Lamar Advertising of South Dakota, Inc. v. Kay*,
    267 F.R.D. 568 (D.S.D. 2010) ........................................................................................ 20

*Leviathan, Inc. v. M/S Alaska Maru*,
    86 F.R.D. 8 (W.D. Wash. 1979) ..................................................................................... 22

*Miller v. Automobile*,
    420 F.3d 1098 (10th Cir. 2005) ........................................................................................ 8

*NAACP v. Button*,
    371 U.S. 415 (1963) ........................................................................................................ 14

*NLRB v. Cable Car Advertisers, Inc.*,
    319 F. Supp. 2d 991 (N.D. CA 2004) ............................................................................... 7

- iii -

*NLRB v. Frazier,*
   966 F.2d 812 (3rd Cir. 1992).................................................................. 7

*Norfin, Inc. v. Intern. Business Machs. Corp.,*
   74 F.R.D. 529 (D. Colo. 1977)............................................................... 23

*Perry v. Schwarzenegger,*
   591 F.3d 1147 (9th Cir. 2010)............................................................... 15

*Quarantillo v. Consol. Rail Corp.,*
   106 F.R.D. 435 (W.D. N.Y. 1985).......................................................... 22

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984).............................................................................. 14

*Schoen v. Schoen,*
   48 F.3d 412 (9th Cir. 1995)................................................................... 19

*Seattle Times Co. V. Rhinehart,*
   467 U.S. 20 (1984)................................................................................ 13

*Securities Exchange Commission v. Collins & Aikman Corp.,*
   256 F.R.D. 403 (S.D.N.Y. 2009)............................................................ 21

*Shoen v. Shoen,*
   5 F.3d 1289 (1993)................................................................................ 22

*Stoffels v. SBC Communications, Inc.,*
   263 F.R.D. 406 (W.D. Tex. 2009)............................................................ 6

*U.S. Postal Serv. v. Phelps Dodge Ref. Corp.,*
   852 F. Supp. 156 (E.D.N.Y. 1994)......................................................... 20

*U.S v. Doe,*
   332 F. Supp. 938 (D. Mass. 1971) ........................................................ 15

*U.S. v. Doe,*
   460 F.2d 328 (1st Cir. 1972) ................................................................. 15

*United States v. IBM,*
   83 F.R.D. 92 (S.D.N.Y. 1979)................................................................ 15

*United States v. Nixon,*
   418 U.S. 683 (1974).............................................................................. 17

*United States v. Workman,*
   *138 F.3d 1261 (8th Cir.1998)* ............................................................... 11

*Westmoreland v. CBS, Inc.,*
   97 F.R.D. 703 (S.D..N.Y. 1983)............................................................ 14

- iv -

*Wilkinson v. FBI,*
    111 F.R.D. 432 (C.D. Cal. 1986) ................................................................. 14

*William A. Gross Construction Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.,*
    262 F.R.D. 354 (S.D.N.Y. 2009) ........................................................... 20, 21

*Williams v. Rene,*
    886 F. Supp. 1214 (D.V.I. 1995), rev'd on other grounds, 72 F.3d 1096 (3d Cir. 1995) ........ 22

*Wm. T. Thompson Co. v. Gen. Nutrition Corp.,*
    671 F.2d 100 (3d Cir.1982) ....................................................................... 17

*Wright v. Fred Hutchinson Cancer Research Center,*
    206 F.R.D. 679 (W.D. Wash. 2002) ............................................................ 19

**FEDERAL STATUTES**

18 U.S.C. § 2510(4)-(5) ................................................................................. 1

28 U.S.C. § 636(b)(1) ................................................................................... 9

Electronic Communications Privacy Act ................................................. 1, 2, 10, 16

FOIA ......................................................................................................... 15

**OTHER STATUTES**

Cal. Evid. Code 1070(a) ................................................................................ 17

**RULES**

Fed. R. Civ. Proc. 26(b)(3) ......................................................................... 4, 11

Fed. R. Civ. Proc. 26(b)(3)(A) .......................................................................... 6

Fed. R. Civ. Proc. 26(b)(4)(A) ......................................................................... 11

Fed. R. Civ. Proc. 26(b)(4)(B) ......................................................................... 11

Fed. R. Civ. Proc. 26(b)(4)(C) ......................................................................... 11

Fed. R. Civ. Proc. 26(b)(4)(D) ......................................................................... 20

Fed. R. Civ. Proc. 30(b)(6) ............................................................................. 10

Fed. R. Civ. Proc. 45 .................................................................................... 11

Fed. R. Civ. Proc. 72(a) ....................................................................... 1, 4, 7, 8, 9

Fed. R. Civ. Proc. 72(b) ......................................................................... 1, 5, 9

PAXFIRE'S OPPSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE        Misc. Case No. CV12-80135 SI (NC)

Fed. R. Evid. 501 .................................................................................................... 17

**CONSTITUTIONAL PROVISIONS**

Cal. Const., Article I, § 2(b) ................................................................................... 17

California Constitution, Article I, § 2(a) ............................................................... 10

First Amendment ............................................................................................. passim

**OTHER AUTHORITIES**

1 *McCormick on Evidence § 93*
    (John W. Strong, ed., 5th ed. 1999).......................................................... 11

3 *Weinstein's Federal Evidence § 503.41*
    (Joseph M. McLaughlin, ed., 2nd ed. 1997) ........................................... 11

PAXFIRE'S OPPSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE    Misc. Case No. CV12-80135 SI (NC)

1    Defendant Paxfire, Inc. ("Paxfire") hereby files its Opposition to the Motion of Non-Parties

2   the Electronic Frontier Foundation and Peter Eckersley for *De Novo* Determination of Dispositive

3   Matter Referred to Magistrate Judge.  Movants have improperly brought their motion under Rule

4   72(b), as opposed to 72(a).  For this reason, Paxfire is separately filing an administrative motion to

5   strike EFF's motion.

6                                              **BACKGROUND**

7    Paxfire has been sued in a putative class action by Betsy Feist, a resident of New York

8   City, in the U.S. District Court for the Southern District of New York.[1]  As conceded by movant

9   Mr. Peter Eckersley in his second declaration, filed in this Court,[2] that case was directly instigated

10  by Mr. Eckersley and by his employer and fellow movant the Electronic Frontier Foundation

11  (collectively "EFF" or the "movants") — who solicited law firms in New York for this purpose;

12  those firms thereafter solicited Ms. Feist to bring her class action suit.[3]  The lawsuit was filed, and

13  widely publicized by EFF on its website and through other means, at a time when Paxfire was

14  within days of receiving a buyout offer for its assets in an amount of ten million dollars or more.[4]

15  The lawsuit permanently derailed the buyout.  By derailing the buyout and by unfairly tainting

16  Paxfire with the public and with its Internet Service Provider ("ISP") customers, the lawsuit and

17  publicity have effectively destroyed the company.  All of this occurred despite Ms. Feist's suit

18  being meritless: Paxfire simply did not do most of the things alleged in the lawsuit, and what it did

19  do is lawful under statutory exceptions to the Electronic Communications Privacy Act ("ECPA").[5]

20   While it has cast itself as an organization devoted to acting in the public interest, the

21  underlying lawsuit serves a potential yet concrete financial and commercial motive.  EFF is a

22  potential recipient of a cy pres award from any recovery obtained by the class plaintiffs in the

---

[1] Second Eckersley Decl., Dtk. No. 6, Case No. 12-mc-80135.  His first declaration was filed in
the action in the underlying class action in the Southern District of New York, and has been
entered into the docket in the companion and consolidated case by Respondent Paxfire, Inc., Dtk.
No. 19, Ex. 2, Case No. 12-mc-80122-SI.
[2] Mr. Eckersley testified that he referred this case to the New York law firms representing Ms. Feist.
Second Eckersley Decl.
[3] Ms. Feist testified that attorney Kim Richman of one of those firms solicited her to bring this
lawsuit. Feist Depo. at 9, 196-98, Dtk. No. 21, Ex. G, Case No. 12-mc-80135.
[4] Bergman Decl., Dtk No. 21, Ex. D (No. 7), Case No. 12-mc-80135.
[5] *See* 18 U.S.C. § 2510(4)-(5); *Hall v. EarthLink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005).

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

underlying case, as courts have the authority to award cy pres awards to EFF and similar organizations.[6]  Documents responsive to Paxfire's subpoena will be relevant to showing whether there were any agreements between EFF and Ms. Feist's law firms that, in exchange for damaging, albeit incomplete and inaccurate, information that the law firms would use to file their law suit against Paxfire, these same law firms would steer *cy pres* awards to EFF upon successful resolution of the class action against Paxfire and its codefendant RCN Corp.  Such evidence will assist to demonstrate the baselessness of Ms. Feist's allegations, as well as support Paxfire's assertions in its counterclaims that the lawsuit is a sham and that Ms. Feist—through her attorneys— had a motive for acting with malice in making her defamatory claims against Paxfire.

An examination of the two declarations submitted by Mr. Eckersley demonstrates that EFF instigated this lawsuit as a self-appointed Internet vigilante, so as to impose its own policies concerning "net neutrality," by destroying a lawful business model which it disfavored.  Such is demonstrated by the following: (1) although instigating the lawsuit, EFF published blogs to the public on its website that portrayed the lawsuit as having been brought independently by Ms. Feist and concealing its own participation instigating the lawsuit and its conflict of interest in the outcome of the lawsuit[7]; (2) EFF consulted with Paxfire's commercial competitors about Paxfire's business, although it never consulted with Paxfire to determine whether its allegations were or were not true[8]; and (3) EFF asserted that it and Ms. Feist used the Netalyzr, a software tool, to determine that Paxfire engaged in conduct as alleged in Ms. Feist's Complaint—when it knew that the Netalyzr *was not capable* of making these determinations.[9]

Paxfire filed counterclaims against Ms. Feist, alleging *inter alia* that EFF, Peter Eckersley, and others are Feist's (uncharged) coconspirators.  To obtain discovery for its defense of Ms. Feist's claims, particularly her claim brought under the ECPA (a federal statute), and to establish

---

[6] *Fraley v. Facebook, Inc.* 2012 U.S. Dist. LEXIS 116526 (NDCA  2012); *In re Google Buzz User Privacy Litigation*, 10-00672-JW (NDCA 2010).
[7] EFF Blog dated August 4, 2011, Dtk No. 21, Ex. B (No. 1C), Case No. 12-mc-80135.
[8] Second Eckersley Decl.
[9] Spafford Decl., Dtk No. 21, Ex. I, Case No. 12-mc-80135.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE                    Misc. CV12-80135 SI (NC)

its own counterclaims, it issued subpoenas to both EFF and Mr. Eckersley for documents and deposition testimony.

A more detailed description of the factual background of Paxfire, and the events leading to Ms. Feist's New York lawsuit against Paxfire and the subpoenas served upon EFF and Mr. Eckersley, are set out in Paxfire, Inc.'s Opposition to Non-Parties Electronic Freedom Foundation and Peter Eckersley's Motion to Quash Subpoenas Issued by Paxfire, Inc. and Request for Protective Order.[10]  In support of its Opposition to EFF's Motion for *De Novo* Determination of Dispositive Matter Referred to Magistrate Judge, Paxfire submits the following:

## MEMORANDUM

The Electronic Frontier Foundation ("EFF") instigated this lawsuit and has expressly acknowledged doing so.[11]  Its actions were taken in concert with those of three other researchers as well as Ms. Feist and Ms. Feist's lawyers and law firms, and made use of news media outlets such as the *New Scientist*.[12]  As alleged in Paxfire's Counterclaims in the New York lawsuit, the allegations brought by Ms. Feist and EFF in the press and her lawsuit are false and defamatory; and the lawsuit is a sham brought for improper and malicious motives.

I.     **The Subpoenas at Issue: Procedural History and Standard of review**

Paxfire issued subpoenas in the Northern District of California in connection with the New York lawsuit to EFF and Mr. Eckersley.  These call for the production of all documents referencing (1) Feist and her counsel, including consulting agreements and expert witness agreements; (2) all payments made by Feist and her counsel to ICSI or EFF; (3) any litigation in which the subpoenaed nonparties participated in any way and in which Feist's lawyers were also involved; (4) communications by the subpoenaed parties with respect to Feist or her counsel, Paxfire, RCN, the New Scientist, Poly NYU or the Netalyzer, (5) articles and drafts of articles by the non-subpoenaed parties concerning Feist or her counsel or the Netalyzer; (6) all research results concerning Paxfire or RCN or any of the ISPs mentioned in the Feist complaint; and (7) all

---

[10] Dkt No. 21., Case No. 12-mc-80135.
[11] Second Eckersley Decl., Dtk. No. 6, Case No. 12-mc-80135.
[12] *Id.*

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE                Misc. CV12-80135 SI (NC)

communications with Google, Microsoft or Yahoo pertaining to Paxfire.  The time period for these documents is January 1, 2008 to the present with respect to the documents in categories (1), (2) and (3); January 1, 2011 to the present with respect to category (4); and April 1, 2011 to the present with respect to category (5).  Categories (6 and 7) have no temporal limitations.

EFF filed a Motion to Quash Subpoenas Issued by Defendant Paxfire , Inc. and Request for Protective Order on June 6, 2012.  On July 2, 2012, this Court issued an Order Relating Cases relating EFF's Motion with three other Motions filed in the Northern District of California by Feist and two additional Nonparties, and referring all four motions to Magistrate Judge Cousins.[13]

On August 13, 2012, Magistrate Judge Cousins issued his Order,[14] granting in part and denying in part the motions to quash the subpoenas.  The Magistrate ordered that:

(1) the subpoenas are quashed with respect to documents generated after July 24, 2011, that fall within categories (1), (2), (3) and (4) because they are protected by the work-product doctrine under Rule 26(b)(3);

(2) the subpoenaed nonparties must produce non-privileged responsive documents generated before July 24, 2011, that fall within categories (1), (2), (3), and (4);

(3) the subpoenas are quashed with respect to the documents in categories (5) and (6) because they contain confidential research;

(4) the deposition subpoenas issued to ICSI, Christian Kreibich, EFF, and Peter Eckersley are quashed; and

(5) the document subpoena issued to Jim Giles is quashed.

Also, the Order requires that, "The Parties may file objections to this order within fourteen days after it is filed.  Fed. R. Civ. P 72(a)."

Under Rule 72(a), which concerns nondispositive matters, and under the corresponding Local Rule, Civil L.R. 72-2, the standard of review of objections is that the district judge must "modify or set aside any part of the order that is clearly erroneous or contrary to law."  Under

---

[13] Order Relating Cases (Dkt. 16).
[14] Order Granting in Part and Denying in part Motions to Quash (Dkt. No. 30, Case No. 12-mc-80135)

- 4 -

these two rules governing objections to a magistrate judge's order with respect to a nondispositive matter in this district, the objecting party is limited to the filing of a paper of five pages in length; the opposing party is not required to file a response unless ordered to do so by the Court; no hearing is allowed; and if after fourteen days have passed there is no briefing schedule set and the objections are not addressed by a ruling of the Court, they are automatically deemed denied. Civil L.R. 72-2.

The plaintiff, Betsy Feist, has not objected to any aspect of the Magistrate Judge's order. Paxfire has objected to certain provisions of the order.[15]

Rather than move for reconsideration of this procedural order and its accompanying restrictions, EFF ignored the order's express language, unilaterally decided that it had the right to appeal the order *de novo* under Rule 72(b) and the corresponding Local Rule, Civil L.R. 72-3(a), and filed a fifteen page noticed motion under Civil L.R. 7-2 setting a hearing date of October 19, 2012.  EFF's noticed motion is not allowed under Civil L.R. 72-2.

EFF essentially remakes nearly all of the arguments that it made in its motion to quash, as well as objecting to the production ordered by the Magistrate Judge set forth in point two above. It makes nine specified arguments in support of its objection, and asks for a *de novo* review of those portions of Magistrate Judge's decision to which it objects.  EFF's motion lists the following nine objections to the Order:

> A.  The Magistrate Judge Failed to Address Whether EFF's First Amendment Rights Bar Enforcement of the Subpoenas, Which They Do, So the Decision Was Clearly Erroneous and Contrary to Law.
>
> B.  The Magistrate Judge Failed to Address Whether the California Press Shield Law and First Amendment Protect Documents Ordered Produced.
>
> C.  The Magistrate Judge Failed to Address Whether Protected Documents in Category 7 Must Be Produced.
>
> D.  The Magistrate Judge Failed to Address Protection of Documents Under Rule 26(b)(4)(D),  Which Precludes Discovery From Non-Retained Experts.

---

[15] Dkt. No. 31.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

1

E.  The Magistrate Judge Erred in Holding that Work Product Protection Only Applies After a Client Formally Retains Counsel.

2

3

F.  The Magistrate Judge Erred by Failing to Extend Confidential Research Protection to Category 4 and 7 Documents.

4

5

G.  The Magistrate Judge Erred by Failing to Sufficiently Address the Consequences of the Dismissal of Paxfire's Counterclaims.

6

7

H.  If Permitted to Stand, the Magistrate Judge's Order Would Have a Profound Negative Impact on EFF and Many Other Advocacy Organizations.

8

9

I.  The Magistrate Judge Erred in Apparently Concluding that Paxfire Documented the Relevance of Its Requests and Not Addressing the Undue Burden They Impose on EFF.

10

## II.   ARGUMENT

11

12

### A.   EFF Lacks Standing to Object to the Magistrate's Decision Regarding the Applicability of the Work Product Doctrine.

13

14

The work product doctrine is a protection afforded to a party and its attorneys.  The

15

doctrine, as codified in Fed. R. Civ. Proc. 26(b)(3)(A) , is that "a party may not discover

16

documents and tangible things that are prepared in anticipation of litigation or trial by or for

17

another party or its representative. . ."  Betsy Feist and her attorneys have the standing to invoke

18

the work product protection doctrine in this case; however, EFF does not. *Hobley v. Burge*, 433

19

F.3d 946, 949 (7th Cir. 2006); *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412 (W.D.

20

Tex. 2009).  Here, Ms. Feist and her attorneys have not objected to the Magistrate Judge's ruling,

21

including that portion finding that the protection does not apply to a certain category of

22

documents—her decision not to object constitutes an acceptance, or at least a waiver as to any

23

objection, of the Magistrate Judge's ruling concerning the application of this doctrine to her

24

interests.  A non- party cannot step in and object when the party the doctrine is meant to protect

25

had the opportunity to object, but did not.

### B.   The Correct General Standard of Review of the Magistrate Judge's order is Whether It Is Clearly Erroneous and Contrary to Law, not de novo

26

27

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE                    Misc. CV12-80135 SI (NC)

1.     **The Order concerns a discovery dispute, which is not a dispositive matter.**

Rule 72(a) states in pertinent part, "a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within fourteen days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

A discovery dispute is not dispositive of a *party's* claims or defenses.  Rulings by a magistrate judge regarding discovery disputes are reviewed under the clearly erroneous and contrary to law standard. Here the motions to quash at issue were *referred to the Magistrate Judge as discovery disputes* by the District Court and were *expressly treated as such by the Magistrate Judge* under Rule 72(a). EFF did not raise any issue as to the referral of its Motion as a discovery dispute at that time.  It cannot be heard to complain now that it is dissatisfied with the ruling.

Substantively, EFF's arguments in this regard are also flawed.  EFF suggests that when a subpoena is issued from and challenged in a district court other than the one in which the underlying case is proceeding, a separate miscellaneous proceeding in the first district court causes the standard of review of the challenge to be altered. (EFF Motion at 2-1.)  The cases cited by EFF, *NLRB v. Frazier*, 966 F.2d 812 (3rd Cir. 1992) and *NLRB v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991 (N.D. CA 2004) are distinguishable because they involved administrative subpoenas *that were not ancillary to a district court action*.  EFF also cites to *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*, No. MISC 08–347(ARR)(MDG), 2010 U.S. Dist. LEXIS 40653 (E.D.N.Y. Feb. 5, 2010),  a memorandum and order in Eastern District of New York that, in a footnote, seems to extrapolate erroneously from those two cases to state without sound analysis that any motion to quash filed in a court separate from the court where the underlying case is pending is dispositive.    That extrapolation ignores that in discovery disputes concerning out-of-district judicial (rather than administrative) subpoenas the case itself will

continue whatever the ruling on the motion to quash—and constitutes a line of reasoning that is in conflict with that adopted by this district.  *See Highfields Capital Management, L.P. v.*  Doe, 385 F. Supp 2d 969, 971 (N.D. Cal 2005) (applying "clearly erroneous and contrary to law" procedure and standard of review  of a motion to quash a subpoena relating to a case in another district court).   "Although resolution of the motion will conclude the miscellaneous proceeding in this district, plaintiff's complaint against defendant will remain pending before the District of Massachusetts, irrespective of resolution of the miscellaneous proceeding".  *Id.  See also Channelmark Corp. v. Destinations Products Int'l, Inc*., No. 99 C 214, 2000 U.S.Dist. LEXIS 9854, at *4 (N.D. Ill. July 7, 2000).   While the *Highfields* court also reviewed the Magistrate Judge's order de novo, it explained that, "[t]he fact that the plaintiff suggests it may dismiss its complaint if this Court grants the motion to quash does not serve to transform the motion into a dispositive motion." *Highfields,* 385 F. Supp 2d at 971 n. 3.

### 2.   The Standard of the Review Is Not Heightened by the Fact That the Order of the Magistrate Judge's Does Not Address in Particulars Each and Every Argument Offered by EFF Made in Its Motion to Quash

Here, the Magistrate Judge, after reviewing the filings, determined that a hearing on the motion was unnecessary, and cancelled a hearing that had been set and decided the matter on the papers.   As evidenced by that act, the Magistrate Judge clearly considered EFF's arguments.  The Magistrate Judge then complied with the requirement of Rule 72(a) by issuing a written order stating his decision.

When the record indicates that a magistrate judge has considered all of the materials and he subsequently does not, in his written order, address a particular argument made by the moving party, his order may be considered an implicit denial of those arguments as facially insubstantial—that is, as not even worth addressing in written form.  *See Miller v. Automob*ile Club of New Mexico, Inc., 420 F.3d 1098, 1117 (10th Cir. 2005)(where the record indicated that district court considered all materials, "we may properly construe a district court's failure to address arguments raised in a Rule 72(a) objection 'as an implicit denial of those arguments.'") That the Magistrate Judge has rejected a particular argument of EFF by issuing a ruling that

inherently rejects that argument but did not provide a specific analysis of that argument and his

decision-making with respect to it does *not* constitute a basis for a different standard of review.

### 3. EFF's Presentation of a First Amendment Claim Does Not Change the Standard of Review or the Procedures for Obtaining Review

EFF's claim that its First Amendment Claim entitles it to a heightened standard of review

is erroneous.  Purely legal, constitutional claims are reviewed under the "contrary to law" standard

identified in 28 U.S.C. § 636(b)(1), which is consistent with both the constitutional and statutory

authority vested in the courts' district and magistrate judges.  *Adolph Coors Co. v. Wallace*, 570 F.

Supp. 202, 205 (1983).  More significantly here, despite allowing the District Judge to "overturn

any conclusions of law which contradict or ignore applicable precepts of law, as found in the

Constitution, statutes or case precedent," the review procedure does not convert this review from

one to be taken pursuant to Rule 72(a) and Civil L.R. 72-2, with its five page and other limitations,

into one pursuant to Rule 72(b) and Civil L.R. 72-3(b).  Put simply, EFF's abuse of the review

process is inexcusable, and for this reason (as explained in Paxfire's separate motion seeking such

remedy) EFF's instant motion should be struck.

### C. EFF Presents no Basis to Reverse the Order to Produce Documents

Whatever standard of review is applied, that portion of the Magistrate Judge's order to

which EFF objects must be upheld by this Court.  Paxfire is entitled to EFF's evidence,

particularly with regard to EFF's communications with other researchers and with the law firm

who ultimately solicited and now represent Ms. Feist: without this material, Paxfire would be

unfairly deprived of an opportunity to develop its defenses and to prosecute its counterclaims.

EFF is the entity that is ultimately behind the New York class action: it instigated this lawsuit,

providing information to Ms. Feist's lawyers, before Ms. Feist was ever contacted by her lawyers

for this suit and told about Paxfire, and doing so for the acknowledged purpose of causing the

lawsuit to be filed.[16]  Indeed, during her deposition Ms. Feist conceded she did not know if she

ever had a search or keyword "redirected" by RCN through Paxfire.[17]  Appropriately, Paxfire

---

[16] Second Eckersley Decl.
[17] Feist Depo. at 9, 196-98.

1    served document and deposition subpoenas on Mr. Eckersley and his EFF to learn what evidence

2    they have supporting the lawsuit they instigated.

3        As for its Counterclaims, while Paxfire understands that an argument exists, under the First

4    Amendment, that Paxfire may have a heightened burden of proving fault in a "sham" lawsuit or in

5    defamation, nothing in the First Amendment shields EFF and Eckersley from Paxfire's discovery

6    conducted in Paxfire's effort to satisfy this burden.  Indeed, this heightened burden necessitates

7    that Paxfire be allowed broad discovery.

8        In *Herbert v. Lando*, 441 U.S. 153 (1977), the U.S. Supreme Court rejected precisely the

9    arguments now advanced by EFF, explaining that investigations into the "editorial process" for

10   falsehood or libelous reporting would not lead to self-censorship of stories that are documented

11   and true, but it would be "only knowing of reckless error [that] will be discouraged," something

12   which would not threaten the constitutionally protected freedom of the press.  *Id.* at 173.

13   Moreover, EFF is reminded that, even under the California Constitution, Art. I, Sec. 2(a), it can be

14   held "responsible for the abuse of" the right to speak and publish freely.  While speech and

15   advocacy, including associating with others in bringing a lawsuit, enjoy a degree of protection,

16   defamation and the bringing of a "sham" lawsuit are actionable wrongs subject to the ordinary

17   rules of discovery.  Finally, no special privileges bar discovery of matters for which EFF and

18   Eckersley are *fact* witnesses in support of claims or defenses in the Feist action.

19       The subpoenas to EFF and Eckersley are narrowly drawn, seeking information specifically

20   relevant to Paxfire's defenses (and counterclaims).  In her Rule 26(a)(1) Disclosures, Ms. Feist

21   expressly identified EFF and Mr. Eckersley as sources of information for her case in chief and for

22   discovery.[18]  What Paxfire seeks includes evidence concerning the nature of the Netalyzer;

23   information that EFF obtained, directly and through its collaborations with the ISI researchers and

24   Paxfire's competitors (such as Google and Microsoft); and anything else that will assist Paxfire in

25   disproving the technical allegations in Ms. Feist's ECPA claim as well as her tort claims brought

26   under New York law.  The document and Rule 30(b)(6) subpoenas also seek information that

27
     _____

     [18] Plaintiff Feist's Revised Rule 26(a)(1) Disclosures, Dtk No. 21, Ex. K at 15, Case No. 12-mc-
28   80135.

1   would demonstrate a common scheme or plan, motive, malice, and absence of mistake, evidenced

2   by Mr. Eckersley's and EFF's intentional failure to disclose their connections to Ms. Feist's

3   lawyers and her lawsuit in EFF's blog postings.

4   Mr. Eckersley, on his own behalf and acting on behalf of EFF, had submitted into the

5   record in this proceeding and in the underlying New York case, not one, but two declarations in

6   support of various positions taken by them and by Ms. Feist.  Such action constitutes a waiver by

7   the movants of any privilege regarding the topics discussed in those declarations.  Privileges

8   cannot be used simultaneously as a sword and as a shield.  *See* 1 *McCormick on Evidence § 93*

9   *(John W. Strong, ed., 5th ed.1999) (noting that client's conduct, such as partial disclosure , may*

10   *constitute waiver where it would be "unfair for the client to invoke the privilege thereafter"); see*

11   *also 3 Weinstein's Federal Evidence § 503.41 (Joseph M. McLaughlin, ed., 2d ed.1997) (waiver by*

12   *implication may occur whenever party takes a position that makes it unfair to protect attorney-*

13   *client communications, such as when a client testifies about portions of such communications or*

14   *client relies on attorney's advice as element of claim or defense)*; *United States v. Workman, 138*

15   *F.3d 1261, 1263-64 (8th Cir.1998) (implied waiver is to prevent defendant from "selectively*

16   *assert[ing] the privilege to block the introduction of information harmful to his case after*

17   *introducing other aspects" of attorney-client communications that are beneficial; "attorney client*

18   *privilege cannot be used as both a shield and a sword")*.  By introducing the declarations, Mr.

19   Eckersley and EFF must submit to depositions and document discovery at least as to the topics

20   contained in those declarations.

21   **III.      No Privilege or Constitutional Right Shields EFF from This Routine Discovery**

22   In commencing Paxfire's rebuttal to EFF's assertion of "its" various privileges, Paxfire

23   notes the following: although the Federal Rules allow restrictions on the disclosure of arguably

24   relevant information, *i.e.* Rules 45, 26(b)(3), 26(b)(4)(A), 26(b)(4)(C), the burden is on the person

25   objecting to discovery to demonstrate each element justifying secrecy.

26   The Supreme Court has expressly rejected EFF's First Amendment "defense" to discovery.

27   *Herbert*, 441 U.S. 153 (no "editorial process" privilege in defamation case; the heightened burden

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

of proving "actual malice," rather than limits or ban on discovery, provides protection for First

Amendment rights).  "Given the required proof [actual malice], however, damages liability for

defamation abridges neither freedom of speech nor freedom of the press."  *Id*. at 160.  In *Herbert*

the Court went on to focus on whether discovery would impermissibly infringe the First

Amendment.  It found that it would not: "[T]hese cases [imposing the higher burden of proof did

not] suggest any First Amendment restriction on the sources from which the plaintiff could obtain

the necessary evidence to prove the critical elements of his cause of action. . . .  Inevitably, unless

liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer

would be open to examination. . . . [A]ccording an absolute privilege to the editorial process of a

media defendant in a libel case is not required, authorized, or presaged by our prior cases, and

would substantially enhance the burden of proving actual malice, contrary to the expectations of

*New York Times*, *Butts*, and similar cases."  *Id*. at 160, 169.  Indeed, the Court recognized that the

higher burden would lead to *more* discovery: "The plaintiff's burden is now considerably

expanded.  In every or almost every case, the plaintiff must focus on the editorial process and

prove a false publication attended by some degree of culpability on the part of the publisher."  *Id*.

at 176.

In rejecting the requested absolute "process" privilege, the Court observed that "the

suggested privilege for the editorial process would constitute a substantial interference with the

ability of a defamation plaintiff to establish the ingredients of malice as required by *New York*

*Times*."  *Id*. at 170.  Rejecting the suggestion that discovery into the "process" of preparing the

publication would impermissibly chill protected First Amendment activity, such "effects are

precisely what New York Times and other cases have held to be consistent with the First

Amendment.  Spreading false information in and of itself carries no First Amendment credentials.

"'[T]here is no constitutional value in false statements of fact.' . . . If such proof results in liability

for damages which in turn discourages the publication of erroneous information known to be false

or probably false, this is no more than what our cases contemplate and does not abridge either

freedom of speech or of the press."  *Id*. at 171-172 [citation omitted].

The Court correctly explained that permitting discovery, as opposed to the recognition of an absolute privilege, promotes the First Amendment value of accuracy without self-censorship:

> In resolving the issue whether the publication was known or suspected to be false, it is only common sense to believe that inquiry from the author, with an opportunity to explain, will contribute to accuracy.  If the publication is false but there is an exonerating explanation, the defendant will surely testify to this effect.  Why should not the plaintiff be permitted to inquire before trial?  On the other hand, if the publisher in fact had serious doubts about accuracy, but published nevertheless, no undue self-censorship will result from permitting the relevant inquiry. Only knowing or reckless error will be discouraged; and unless there is to be an absolute First Amendment privilege to inflict injury by knowing or reckless conduct, which respondents do not suggest, constitutional values will not be threatened.

*Id*. at 173.

The Court also considered and rejected EFF and Eckersley's argument that discovery would impermissibly interfere with internal deliberations claimed essential to EFF's advocacy function:

> It is also urged that frank discussion among reporters and editors will be dampened and sound editorial judgment endangered if such exchanges, oral or written, are subject to inquiry by defamation plaintiffs.  We do not doubt the direct relationship between consultation and discussion on the one hand and sound decisions on the other; but whether or not there is liability for the injury, the press has an obvious interest in avoiding the infliction of harm by the publication of false information, and it is not unreasonable to expect the media to invoke whatever procedures may be practicable and useful to that end.  Moreover, given exposure to liability when there is knowing or reckless error, there is even more reason to resort to prepublication precautions, such as a frank interchange of fact and opinion.  Accordingly, we find it difficult to believe that error-avoiding procedures will be terminated or stifled simply because there is liability for culpable error and because the editorial process will itself be examined in the tiny percentage of instances in which error is claimed and litigation ensues.  Nor is there sound reason to believe that editorial exchanges and the editorial process are so subject to distortion and to such recurring misunderstanding that they should be immune from examination in order to avoid erroneous judgments in defamation suits.

*Id*. at 173-174.  Here again, discovery promotes, rather than infringes, First Amendment values.

In *Seattle Times Co. V. Rhinehart*, 467 U.S. 20, 37 (1984), the Court did not bar discovery, but instead approved the use of a protective order precluding the release outside current litigation of broad discovery of a religious organization, including identities of persons making donations over five-year period and amounts. *See also*, e.g. *Kerr v. U.S. Dist. Ct. f*or *N. D.*, 426 U.S. 394,

405-406 (1976) (approving use of protective order restricting access to discovered information and potential for in camera review by district court in response to state claim of privilege in confidential communications among prison decision makers).

The court in *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703, 706 (S.D..N.Y. 1983) also rejected a similar claim that the First Amendment protected a self-critical appraisal internal report. Relying on *Herbert*, the court observed that "inquisition" via discovery into the "editorial process" implicated a "substantial and important interest, not lightly to be overridden in litigation, . . . [t]he question in this case has, however, already been substantially answered by the Supreme Court in *Herbert v. Lando*, which went much further."

### A. No General Privilege Exists for Advocacy Organizations or Researchers Such as Movants

There is no general rule or privilege exempting "advocacy," organizations, even those who exercise their constitutional rights, from responding to routine discovery requests. *See, e.g., Wilkinson v. FBI*, 111 F.R.D. 432, 437 (C.D. Cal. 1986) (no showing that discovery would impair associational interests of civil rights group). Here, Paxfire in no way seeks to *prevent* EFF from investigating and advocating for civil liberties issues arising in the context of the Internet.[19] EFF has admitted that it instigated the lawsuit. Paxfire simply seeks to discover what it knows about the factual allegations Feist made against Paxfire in her Complaint, so as to understand the factual basis for her Complaint. Further, Ms. Feist has listed a number of organizations and persons, including the three previously identified ICSI researchers and Google and Microsoft, as well as EFF and Mr. Eckersley, as having information about her claims.[20] Mr. Eckersley acknowledged, in his second declaration, that he discussed Paxfire's technology with these entities, and Paxfire must be allowed to inquire as to the specifics of this information that led him, EFF, and Ms. Feist to bring the underlying lawsuit. Paxfire is *not* seeking discovery because EFF and Eckersley

---

[19] *NAACP v. Button*, 371 U.S. 415 (1963) (unconstitutional ban on certain legal referrals; nothing to do with ordinary discovery) and similar cases are thus inapposite. *See, e.g., Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) (statutory ban on gender discrimination by civil organization did not infringe right of free association; same).

[20] Ex. J, Plaintiff Feist's Revised Rule 26(a)(1) Disclosures at 11, 13, 15.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

1  "exercised" *their* constitutional rights, but simply as part of its own right to investigate the merits

2  of (and defenses against) Feist's allegations.  Moreover, civil liability, *e.g.* in tort, is routinely

3  imposed on those who have "exercised" a constitutional right.

4      EFF is nothing like the political groups given some qualified protection for internal

5  discussions and formulations of views.  Here, the requested discovery primarily concerns EFF's

6  communications with outsiders, and internal information concerning Feist and Paxfire, and not the

7  internal formulation of general policy and strategy regarding its Internet advocacy.  Any protection

8  should be limited to purely internal communications not specifically related to Feist or Paxfire.

9  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162-63 (9th Cir. 2010) (limited protection).

10     Similarly, although there is protection for scientific research under the First Amendment,

11  there is no privilege barring discovery.[21]

12     **B.    No General Privilege Exists for Investigations**

13     EFF also seeks to avoid discovery because it is supposedly investigating potential abuses

14  of civil liberties and privacy on the Internet.  While the justification for limiting discovery may be

15  higher where the alleged investigation is infused with promises of confidentiality to unnamed

16  sources, neither EFF nor Eckersley has interposed any such risk of betraying confidences: indeed,

17  they disclosed their information to Ms. Feist, the New Scientist, and to the public in blogs; and

18  they identified in their blogs and in Mr. Eckersley's declarations who and what were their sources.

19  Further EFF lacks the necessary *indicia* of a truly independent press to justify protection.  *See,*

20  ────────────────
   [21] *See, e.g., United States v. IBM*, 83 F.R.D. 92 (S.D.N.Y. 1979) (no professional fellowship

21  privilege; no showing that discovery sought disclosure of genuinely confidential sources); *U.S. v.
   Doe*, 460 F.2d 328 (1st Cir. 1972); *U.S v. Doe*, 332 F. Supp. 938 (D. Mass. 1971); *Deitchman v.*

22  *E.R. Squibb & Sons*, 740 F.2d 556, 561 (7th Cir. 1984) (no absolute privilege blocked disclosure
   from cancer registry in products liability case); *Anker v. G.D. Searle & Co*., 126 F.R.D. 515, 519

23  (M.D.N.C.1989) ("experts or researchers do not have any federal statutory, case law or common
   law privilege which protects against their having to involuntarily share their expertise with the

24  parties in the litigation.  Nor does [state] law provide privilege protection for academic or
   scientific researchers."); *In re Snyder*, 115 F.R.D. 211, 213 (D.Ariz.1987) ("there is no general

25  academic privilege protecting [the researcher's information]"); *Burka v. U.S. HHS*, 87 F.3d 508,
   520-21 (D.C. Cir 1996) (FOIA exemption 5 case applying civil discovery rules, "we cannot say

26  that there is an established or well-settled practice of protecting research data in the realm of civil
   discovery on the grounds that disclosure would harm a researcher's publication prospects."); *In re*

27  *American Tobacco Co*., 880 F.2d 1520, 1528-29 (2d Cir. 1989).

28
   ────────────────
                                        - 15 -
   PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
   OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

*e.g., Chevron Corp. v. Berlinger*, 629 F.3d 297, 308 (2d Cir. 2011) (denying press privilege and ordering disclosure of documentary "outtakes").  In *Chevron* the court explained:

> Those who gather and publish information because they have been commissioned to publish in order to serve the objectives of others who have a stake in the subject of the reporting are not acting as an independent press.  Those who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all. . . .  The privilege is designed to support the press in its valuable public service of seeking out and revealing truthful information. An undertaking to publish matter in order to promote the interests of another, regardless of justification, does not serve the same public interest, regardless of whether the resultant work may prove to be one of high quality. It is not the policy of the law to exempt such undertakings from the obligation to produce information relevant to a dispute before a court of law.  *Id.*

**C.     Neither California Nor New York Press Privilege Law Applies to EFF Because EFF is Not "Press"**

As a preliminary matter, and contrary to EFF's protestations, Paxfire does *not* agree that state law applies to this dispute.  To the contrary, federal law applies.

The major claim brought by Ms. Feist is under ECPA, a federal statute, pursuant to which federal question jurisdiction applies.  Paxfire seeks discovery to defend against this claim[22].  For this reason the justification, if any exists, for resisting discovery must arise from federal common or statutory law. *See Eagle Precision Technologies, Inc. v. Eaton Leonard Robolix, Inc., No. 03cv352-BEN(WMC)*2005 U.S. Dist. LEXIS 47173, at *7 (S.D.Ca. Aug. 11, 2005); *Boyd v. City & County of San Francisco*, No. C-04-545MM(JLS) 2006 U.S. Dist. LEXIS 27647, at *10 (N.D.Ca. May 1, 2006) ("Assertions of privilege in federal question cases are governed by federal law, while state privilege law applies to purely state claims brought in federal court pursuant to diversity jurisdiction. . . .   State law claims that are pendent to federal question

_____

[22] EFF apparently has seen that, in its opposition to the Motion by Jim Giles to Quash Paxfire's subpoena to Mr. Giles, Paxfire argues that state law applies.  What EFF overlooks is that the evidence sought from Mr. Giles concerns only Paxfire's counterclaims—defamation and tortious interference with contract which are purely New York state law claims. With regard to the subpoenas served upon EFF and Mr. Eckersley Paxfire is seeking to obtain evidence to defend itself from Ms. Feist's main claim, that is, an allegation that Paxfire violated ECPA.  This claim s founded in federal statutory law and thus federal law, not state law, applies to the questions of privilege and the scope of discovery.

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE                    Misc. CV12-80135 SI (NC)

cases, however, are governed not by state law but by federal privilege law."); *see, e.g. Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (rejecting federal privilege for hospital peer review report in prisoner death case); *Wm. T. Thompson Co. v. Gen. Nutrition Corp*., 671 F.2d 100, 104 (3d Cir.1982) (federal rule favoring admissibility trumped state privilege claim); Fed. R. Evid. 501, advisory committee note ("If the rule proposed here results in two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that the rule favoring reception of the evidence should be applied."); *United States v. Nixon*, 418 U.S. 683, 710 (1974) (not even the President enjoys an absolute privilege).

For these reasons, and contrary to EFF's protestations to the contrary, California state law, including its Shield Law, is not applicable.

Additionally, California's press privileges, Cal. Const., Art I, Sec. 2(b) (the Shield law) and Cal. Evid. Code 1070(a), do not apply even assuming that California law does: here, EFF and Eckersley are not press.  If courts were to regard EFF's blogs as "press," and Mr. Eckersley as a "reporter," then the privilege would literally swallow up, and immunize from routine discovery, every corporation, individual, or other entity that published a "news" blog, every researcher that published in academic journals, and every vigilante with a Facebook page.  The ease and efficiency of the Internet as a communications tool cannot expand the press privilege to a leviathan that swallows the discovery rules.  If this is to be done, it must be done only by the legislature.

EFF's website[23] describes itself as a militant warrior, with a staff of technologists and activists, not as the "press" or media with a staff of neutral reporters:

> When our freedoms in the networked world come under attack, [EFF] is the first line of defense. . . . From the beginning, EFF has championed the public interest in every crucial battle effecting digital rights. . . . EFF achieves significant victories on behalf of consumers and the general public.  EFF fights for freedom primarily in the courts, bringing and defending lawsuits even when that means taking on the US government or large corporations.  By mobilizing more than 140,000 concerned citizens through our Action Center, EFF beats back bad legislation.  In addition to advising policymakers, educates the press and public.

---

[23] *See* www.eff.org [visited 6/15/12].

By its own admission, EFF "educates" the press: it is not *the* press.  As a public figure,

EFF is frequently "in the news," but that is quite different than "reporting the news."  The shield

law is only available to a "newspaper, magazine, or other periodical publication"—not EFF's

website.

Moreover, EFF lacks the essential ingredient of media entitled to claim the privilege, *e.g.*,

independence.  Eckersley admits that he has been a "paid consultant" to Feist's counsel,

apparently on similar issues related to "network neutrality."[24]  There was at least some

consideration that Mr. Eckersley would act as a "paid expert consultant in this particular matter."[25]

And EFF instigated the suit for its own purposes.

Mr. Eckersley's lack of "press" independence is truly startling.  He claims to have had

detailed discussions with several self-styled experts at Berkley and in New York about Paxfire and

"confidential" conversations with Paxfire's competitors at Google, Yahoo, and Microsoft.  But he

didn't have a *single* communication with Paxfire concerning its supposedly troublesome activities.

If his concerns for civil liberties were genuine, he would simply have picked up the phone and

called Paxfire before launching a lawsuit filled with demonstrably false and defamatory

allegations.  His actions are those of a partisan, vigilante, or a shill for Paxfire's competitors, not

those of the "press" nor of a *bona fide* advocate for "civil liberties."

The core concern of the "shield law" is the protection of confidential sources.  Mr.

Eckersley states that he "implicitly or explicitly" promised by sources confidentiality,[26] but there

is no listing of specific conversations or of "sources."  Moreover, these "sources" are apparently at

ICSI, Google, Yahoo, and Microsoft, competitors of Paxfire, and the topics of discussions related

to Paxfire, not any "whistleblower' wrongdoing at their respective companies.  The information

communicated appears to be purely of a commercial nature and not the sort of sensitive

information related to intimate personal details, politics, medical privacy, or "internal" misconduct

that is the type of "confidential" information the "shield" was designed to protect.

---

[24] Second Decl. P. Eckersley at ¶ 19.
[25] *Id*. at ¶ 20.  Also, as discussed above, it is apparent that EFF in actively soliciting *cy pres* awards as part of its business model, and Paxfire believes that this is what it did here.
[26] *Id*. at  ¶ 17.

- 18 -

1    Similarly, the status of EFF (as a self-appointed internet activist) and Eckersley (as a paid

2  consultant, expert, and technologist) deny them any developing common law privilege for non-

3  party journalists.  EFF's function was to take down Paxfire and not to simply report on Paxfire's

4  activities as a neutral and independent reporter.  EFF absolutely has the right to be an activist but,

5  at least with respect to Paxfire, it cannot at the same time wrap itself in any of the press privileges.

6  In contrast, the non-party Seattle Times investigative reporter from whom discovery was sought in

7  *Wright v. Fred Hutchinson Cancer Research Center*, 206 F.R.D. 679 (W.D. Wash. 2002), was

8  undisputedly an independent journalist.  There, the only question was whether he lost that status,

9  and forfeited the qualified privilege, because he was said to have a "bias" favoring plaintiffs who

10  were patients in a class action challenging a bone marrow research protocol.  The court held that

11  he did not lose the privilege because of this "bias."  *Id*. at 681.  The court observed that Wright

12  "was [not] being paid by plaintiffs, or shown that he was *otherwise motivated* to investigate

13  defendants for non-journalistic purposes."  (Italics added.)  *Id.*  Here, Eckersley had been paid by

14  Feist's counsel before, considered being paid in this case, now serves as an "informal consultant,"

15  and from the outset of his "investigation" had the non-journalistic purpose of protecting the purity

16  of the Internet from what he believed was abusive conduct by Paxfire, doing so by putting Paxfire

17  out of business—and doing so in league with Paxfire's competitors Google and Microsoft.  He is

18  not entitled to the privilege.

19    The privileges asserted by the "non-party" journalists in the cases cited by EFF stand in

20  stark contrast to the status of the movants in the present controversy.  Everything Plaintiff Feist

21  "knows" about the case she learned from EFF with its associated researchers.  The discovery

22  sought by Paxfire of EFF is unquestionably relevant.  Since Feist only learned about Paxfire from

23  EFF and its associates, the focus of the "actual malice" inquiry will be on EFF and Eckersley as

24  well as Ms. Feist as the true instigators of this litigation.  In contrast, the court in *Schoen v.*

25  *Schoen*, 48 F.3d 412, 416-17 (9th Cir. 1995) held only that disclosure could not be used to prove

26  ///

27

28

PAXFIRE'S OPPOSITION TO MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE          Misc. CV12-80135 SI (NC)

actual malice due to a timing issue and as would it be cumulative of evidence already in the record.

### D. Neither the Attorney Client Privilege Nor the Work-Product Doctrine Shield EFF

EFF claims that Rule 26(b)(4)(D) shields them from discovery because they were "informally consulted in preparation for trial." At most, that protection began on July 25, 2012; prior to that date there was no client and no litigation.

As discussed above, EFF has no standing to assert Ms. Feist's work product protections. Even if they had the standing to make such an objection, the objection would be unwarranted. The work product doctrine protects the work product of an attorney created during or in anticipation of litigation, *Hickman v Taylor*, 329 U.S. 495 (1947). Neither applies *before an attorney has a client. See Lamar Advertising of South Dakota, Inc. v. Kay*, 267 F.R.D. 568 (D.S.D. 2010) (holding that a factual investigation conducted prior to the decision by a person to bring a lawsuit does not invoke the work product doctrine) (citations omitted); *800 Front Street Corp. v. Travelers Property Casualty Co. of America*, No., CV 06-500(LDW)(ARL), 2006 U.S.Dist. LEXIS 84160, at *11 (E.D.N.Y. Nov. 20, 2006) (holding that work product doctrine applied where consulting expert was retained by counsel "shortly after they were given authorization by the bankruptcy court to pursue the insurance claim as well as litigation"). Thus, assuming that the protection applied, the earliest that it could apply is after July 25th, when Mr. Kim Richman walked Ms. Feist through the Netalyzr program and, as a result, convinced Ms. Feist to become his client to bring this lawsuit. Prior to this time, there was no client, no lawsuit, and nothing to which the confidentiality protections of the work product doctrine could attach.

Material prepared in the ordinary course of a business function and thereafter used in litigation does not, by such use, acquire the protection of the work product doctrine, *Lamar Advertising of South Dakota, Inc.*, 267 F.R.D. at 577-78; nor of the attorney client privilege, *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994)(work by engineering firm not covered by the attorney-client privilege where consultant's opinion was based on factual and scientific evidence rather than client confidence). As explained in *William A. Gross*

- 20 -

*Construction Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 360 (S.D.N.Y. 2009) (citation omitted):

> However, there is no work product protection for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation. . . .Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created "because of" actual or impending litigation. *Id.*

Here, Paxfire must prepare its defense.  It is entitled to explore in discovery the basis of Ms. Feist's allegations.  Ms. Feist has expressly alleged in her Complaint that she "learned" that her Internet searches were being wiretapped, profiled, and disclosed and sold to third parties from information provided by these researchers, by name, and by the Netalyzr used by these researchers and EFF.  As explained by the District Court in *Securities Exchange Commission v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009):

> Rule 11 of the Federal Rules of Civil Procedure [requires] all parties to have "evidentiary support" for the factual contentions in their pleadings.  Given that requirement, producing the compilations of documents that support the factual allegations of a complaint reveals no more than that already revealed by the filing of the complaint. *Id.*

The information held by EFF is needed by Paxfire to prepare its defense as well as its counterclaims; it is unable to get this information from any other source.  As explained, the Netalyzr cannot provide the information that Ms. Feist claims that it did.  Thus, Paxfire must obtain the documents from persons who provided Ms. Feist the information on which she based her complaint. This includes EFF.

Finally, to have protection under the doctrine, the information must be confidential.  EFF has discussed the information sought through its Internet web site.  Paxfire now seeks the specifics.  No confidentiality exists.

## IV.     The Need for Discovery Outweighs Any Speculative Need for Secrecy

To the extent a balancing of competing interests is required to resolve this dispute,[27] that balance favors discovery.  Relevant factors include the nature of the suit; the extent to which

---

[27] *See, e.g., In re Application of Consumers Union of U.S.*, 495 F. Supp. 582 (S.D.N.Y. 1980).

information sought goes to the "heart of the claim" of the party seeking disclosure; whether the

party seeking discovery has exhausted other sources for the information in question; and the

impact of requested discovery on First Amendment interests. *Shoen v. Shoen*, 5 F.3d 1289, 1293

(1993). EFF and Eckersley are not independent journalists entitled to claim the journalists'

privilege for non-parties: they instigated this suit. Eckersley even considered, for a time, being a

paid consultant, but now claims to be an "informal" consultant to Feist's counsel. Thus, there is

an insufficient "First Amendment" interest at stake to trigger any balancing inquiry, even under

the qualified privilege for non-party journalists.

Even if there were, Paxfire meets any test. The requested discovery goes to the heart of

both the Feist suit against Paxfire, *e.g.*, what did Paxfire "do," if anything, that "hurt" Feist, *and* to

Paxfire's defamation/interference counterclaims against Feist, e.g., did "she" act with actual

malice in making false and defamatory allegations against Paxfire. Paxfire already deposed her,

thus exhausting "her" knowledge. Her depositions as well as her Rule 26(a)(1) disclosures

provide no basis for her allegations: she testified that she basically had *no* independent knowledge

concerning Paxfire and that everything she "knew" she learned from EFF and its associates. To

block this discovery would be to unfairly impede Paxfire from gathering key evidence central to

its defenses and counterclaims.

Here, put simply, EFF and Mr. Eckersley are no more than fact witnesses. Feist had no

idea about Paxfire or what Paxfire allegedly "did" that "injured" Feist until EFF told her counsel.

It was EFF and Eckersley that learned, through their own work and through their colleagues, the

"facts" ultimately set forth in Feist's complaint. Thus, they are more akin to a patient's treating

physician and not to a "distant" academic expert, and subject to routine discovery and no

protection applies.[28]

---

[28] *See, e.g., Dung Ngo v. Standard Tools & Equipment, Co., Inc.*, 197 F.R.D. 263 (D. Md. 2000); *Williams v. Rene*, 886 F. Supp. 1214 (D.V.I. 1995), rev'd on other grounds, 72 F.3d 1096 (3d Cir. 1995); *Quarantillo v. Consol. Rail Corp.*, 106 F.R.D. 435 (W.D. N.Y. 1985) (Neurologist who had been treating plaintiff for back injuries over prior 14 years, and whom plaintiff had designated an expert witness for trial, would not be considered an "expert" but rather an "actor" or "viewer."); *Keith v. Van Dorn Plastic Machinery Co*., 86 F.R.D. 458 (E.D. Pa. 1980) (an "actor or viewer" expert witness refers, for example, to a doctor who performed an operation that gave rise to a malpractice claim, or to an actuary who witnessed an automobile accident, and such witnesses

## V.     CONCLUSION

The Magistrate Judge's Order must be reviewed under the clearly erroneous and contrary to law standard.  Except to those objections separately made by Paxfire in its previously and timely filed Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge[29], the Order must be upheld and the documents called for promptly produced.

To the extent that the Magistrate Judge's order did not expressly address category 7 documents, those being external communications with Paxfire's competitors: Google, Microsoft and Yahoo, the Order did not quash the subpoenaed production.  The order should be upheld as to that category of documents as they are relevant to the underlying case in New York[30]; and there is no basis under privilege or other law for documents evidencing such communications with commercial entities and competitors of Paxfire to be withheld.

Dated:  September 12, 2012          BERGESON, LLP


                                    _____/s/_____
                                    Jaideep Venkatesan

                                    Attorneys for Defendant-Counterclaim Plaintiff
                                    PAXFIRE, INC.


Dated:  September 12, 2012          ANDREW GROSSO & ASSOCIATES

                                    _____/s/_____
                                    Andrew Grosso, *pro hac vice*

                                    Attorneys for Defendant-Counterclaim Plaintiff
                                    PAXFIRE, INC.

---

should be viewed as fact witnesses); *Leviathan, Inc. v. M/S Alaska Maru*, 86 F.R.D. 8 (W.D. Wash. 1979); *Barkwell v. Sturm Ruger Co., Inc.*, 79 F.R.D. 444, 446 (D. Alaska 1978) (information acquired and opinions formed by defendant's expert prior to his retention by defendant was discoverable by plaintiffs without regard to the expert's status as an expert, since the rule does not apply to facts known or opinions held that were not acquired or developed in anticipation of litigation); *Harasimowicz v. McAllister*, 78 F.R.D. 319 (E.D. Pa. 1978); *Norfin, Inc. v. Intern. Business Machs. Corp.*, 74 F.R.D. 529 (D. Colo. 1977).
[29] Dtk No. 31, Case No. 12-mc-80135.
[30] Second Eckersley Decl.; *see* Cease and Desist Letter from Google to RCN Corp., Dtk. No. 20, Attach. 1, Case No. 12-mc-80135.